UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| TAMMY SUE ANDREWS, ) | |
| ) | |
| Plaintiff, ) | No. 6:22-CV-184-HAI |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| KILOLO KIJAKAZI, *Acting Commissioner* ) | & ORDER |
| *of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On July 2, 2020, Plaintiff Tammy Sue Andrews, filed a protective Title II application for disability insurance benefits. *See* D.E. 9-1 at 22.[1] Andrews also filed a protective Title XVI application for supplemental security income on September 13, 2019. *Id.* Andrews dates the beginning of her disability period as January 12, 2020, for the Title II application and December 28, 2018, for the Title XVI application. *Id.*

Andrews summarizes her hearing testimony concerning her medical problems. D.E. 11-1 at 5.[2] Andrews claims she is disabled due to fibromyalgia, arthritis, depression, bad knees, and COPD. *Id.* Andrews estimated that she can walk for ten to fifteen minutes before needing to sit down. *Id.* Andrews also described joint pain in her hands and fingers and explained that her knuckles lock up and she has difficulty holding onto things. *Id.* Andrews also indicated that she has anxiety when around more than three or four people. *Id.*

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.
[2] References to the record other than the administrative record are to the page numbers generated by ECF.

1

The Social Security Administration denied Andrews's claims initially on November 2, 2020, and upon reconsideration on December 9, 2020. D.E. 9-1 at 22. Then, on August 10, 2021, upon Andrews's request, Administrative Law Judge ("ALJ") Joyce Francis conducted an administrative hearing. *Id*. The ALJ heard testimony from Andrews and impartial vocational expert ("VE") Brenda Dumas. *Id*. Andrews was found to not be disabled during the relevant period, January 12, 2020, to August 24, 2021, the date of the decision. *Id.* at 30. Andrews brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying her application for disability insurance benefits and supplemental security income. Both parties consented to the referral of this matter to a magistrate judge. D.E. 15. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 16. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 11) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 13).

## I.  The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[3] The ALJ followed these procedures in this case. *See* D.E. 9-1 at 23-30.

---

[3] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Andrews had not engaged in substantial gainful activity since January 12, 2020, the alleged onset date. D.E. 9-1 at 23.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Andrews experiences the severe impairments of obesity, depression, substance abuse, fibromyalgia, degenerative changes of left knee, and reduced range of motion in left hand. D.E. 9-1 at 23.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Andrews failed to meet this standard. D.E. 9-1 at 24.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. The ALJ found Andrews had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; frequently handle and finger with the left upper extremity; frequently be exposed to vibration; and occasionally be exposed to unprotected heights or dangerous moving machinery. Mentally, the claimant can understand and remember simple instructions and procedures; sustain attention and concentration to complete simple tasks with regular breaks every two hours during an eight-hour workday; can interact frequently with supervisors and coworkers; can occasionally interact with the public; can adapt to routine work conditions and occasional workplace changes that are gradually introduced.

*Id.* at 26.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of her residual functional capacity), she is not disabled.  20 C.F.R. § 404.1520(f).  The ALJ found that Andrews was "unable to perform any past relevant work."  D.E. 9-1 at 29.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled.  20 C.F.R. § 404.1520(g).  The ALJ found Andrews was not disabled at this step. D.E. 9-1 at 29-30.  The ALJ explained that she asked the VE at the hearing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."  *Id.* at 30.  The ALJ accepted the VE's testimony that Andrews could find work as, for example, a small products assembler, housekeeping cleaner, and checker. *Id.*  Because sufficient work existed in the national economy that Andrews could perform, the ALJ found her "not disabled" as defined by the regulations.  *Id.*

Accordingly, on August 24, 2021, the ALJ issued an unfavorable decision, finding that Andrews was not disabled, and was therefore ineligible for disability insurance benefits.  *Id.*  The Appeals Council declined to review the ALJ's decision on August 4, 2022.  *Id*. at 1.

## II.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations.  *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors.  20 C.F.R. § 416.920c(c).  Supportability and consistency "are the most important factors" in weighing medical opinions. *Id.* § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility.  The ALJ must consider statements or reports from the claimant.  20 C.F.R. § 404.1529(a).  To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[4] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

### III. Analysis

Andrews argues that the ALJ failed to adequately explain why the opinion of Annette Freel, M.S., that Andrews has marked restrictions in her ability to sustain attention, concentration, and persistence toward the performance of a simple task was not included in the RFC determination. D.E. 11-1 at 7. First, Andrews argues generally that the ALJ did not

---

[4] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

6

sufficiently address the consistency and supportability factors regarding Freel's opinion. The regulations define "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

> The ALJ's opinion includes discussion of Freel's and the other examiners' evaluations:
>
>> The opinion of Annette Freel, M.S. following a consultative examination in September 2020 is somewhat persuasive as to the general limitations opined, although "marked" limitations in sustained attention, concentration, and persistence towards performance of a simple tasks (Exhibit 8F at 9) are not supported by the claimant's treatment history that is virtually nonexistent during the period at issue for mental health concerns. Additionally, Ms. Freel based her opinion upon a single performance, which is not necessarily reflective of the claimant's longitudinal functioning throughout the period of time and, at most, would be a snapshot of the claimant's limitations as of the examination date. Otherwise, the consultative examination opinion of Jonelle Delawrence, M.D. is persuasive to the extent opined although such limitations are vague and lack functional basis (Exhibit 9F). While not inherently lacking in persuasive value, the undersigned finds that the State agency determination at reconsideration by Jean Sutherland, M.D. regarding physical functioning and Mark Thompson, Ph.D. regarding mental functioning are more persuasive overall due to the specific functional limitations expressed (Exhibit 5A; Exhibit 6A).

D.E. 9-1 at 28. Freel's evaluation includes her opinion that Andrews has marked limitations in her ability to sustain attention, concentration, and persistence toward performance of simple tasks. D.E. 9-1 at 645. Freel's evaluation explains that a "moderate" limitation means that the "individual's functioning in this area independently, appropriately, effectively, and on a sustained basis is fair," and a "marked" limitation means the functioning is "seriously limited." *Id.* at 647.

7

As noted by the ALJ, Mary Thompson, Ph.D., also evaluated Andrews's mental functioning.[5] In doing so, Thompson opined, "Ms. Freel's opinion is more persuasive to moderate restrictions. Her findings do not support the marked restrictions proposed in CPP." D.E. 9-1 at 132. Thompson also opined that Andrews remains able to "[s]ustain attention, concentration and persist at simple, familiar tasks requiring little or no judgment and involving minimal variations for extended periods of two-hour segments." *Id.*

The ALJ noted that Thompson's findings were more persuasive overall "due to the specific functional limitations expressed." D.E. 9-1 at 28. Thompson specifically limited Andrews's ability to sustain attention/concentration to "minimal variations for extended periods of two-hour segments" (*id.* at 132), which the ALJ incorporated into the RFC finding (*id.* at 26). On the other hand, Freel's opinion only indicates that Andrews had "marked limitations," but did not include detail on how this impacted her functioning. *Id.* at 645. Further, the ALJ noted that this portion of Freel's opinion was not supported by Andrews's treatment history and was based on a one-time examination. *Id.* at 28. Thus, the ALJ set forth the required "minimum level of articulation" regarding how she considered the consistency and supportability factors in relation to Freel's opinion regarding Andrews's ability to sustain attention/concentration. *Childers v. Kijakazi*, Civil Action No. 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022). Accordingly, the Court finds that the ALJ's findings are not unsupported by substantial evidence or contrary to law.

Next, Andrews argues that the ALJ made no reference to the consistency between Freel's opinion and the diagnosis of depression with anxiety from Amjad Ali, M.D., and ARNP Chelsey Philpot. *Id.* at 8. The Commissioner notes that those diagnoses were made over four years prior to the alleged disability onset date and, thus, are irrelevant to the period at issue. D.E. 13 at 7-8.

---

[5] The Commissioner's motion clarifies that Thompson's first name is Mary, not Mark. D.E. 13 at 6, n.1.

However, the Sixth Circuit has recognized that "evidence presented at an earlier hearing or predating the onset of disability, when evaluated in combination with later evidence, may help establish disability." *DeBoard v. Comm'r of Soc. Sec'y*, 211 F. App'x 411, 414 (6th Cir. 2006). Still, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec'y*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Brown*, 880 F.2d 860, 863 (6th Cir. 1988)). The medical records relied upon by Andrews note her depression with anxiety diagnosis, but do not otherwise contain commentary on her functioning based on that diagnosis. D.E. 9-1. Nor does Andrews argue that there are functioning limitations noted in the records from Ali or Philpot. Andrews has not explained how these records add to the information regarding Andrews functioning that the ALJ already had. Thus, any failure to consider these records, even if error, is harmless. *See DeBoard*, 211 F. App'x at 414 (finding any error in failing to consider certain medical records to be harmless because they did not add to the information the ALJ already had).

Next, Andrews argues that her participation in special education supports Freel's opinion that she has marked restrictions in ability to sustain attention, concentration, and persistence towards the performance of simple tasks. 11-1 at 8. Andrews cites to the SSA Disability Report in which she indicated that she needed "special reading" classes until 1988 when she was in eleventh grade. *Id.* (citing D.E. 9-1 at 318). That report does not contain any further information about those reading classes. Further, Andrews fails to elaborate as to how this special education supports Freel's opinion regarding current marked restrictions in sustaining attention, concentration, and persistence towards to completion of simple tasks. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

9

deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

Andrews also argues that the ALJ failed to consider the consistency of Freel's opinion with her hearing testimony that her anxiety is triggered by loud noises and being around more than three to four people. D.E. 11-1 at 8. Freel's opinion does not include any limitations based on noise, but does note that Andrews's capacity to maintain effective social interactions on a consistent and independent basis is affected with moderate limitations. D.E. 9-1 at 644. The ALJ's RFC finding includes that Andrews "can frequently interact with supervisors and coworkers; [and] can occasionally interact with the public." *Id.* at 26. Andrews fails to elaborate as to how the RFC finding and Freel's opinion regarding her ability to interact with the public are inconsistent, and Freel's opinion does not include any limitations based on noise. Accordingly, the Court finds no legal error in the ALJ's findings on this matter.

Andrews also argues that the ALJ did not articulate her consideration of the consistency between Freel's opinion and the opinions of other evaluators in the record. D.E. 11-1 at 8. However, in the same paragraph she addressed Freel's opinion, the ALJ also addressed the other medical opinions in the record:

> Otherwise, the consultative examination opinion of Jonelle Delawrence, M.D. is persuasive to the extent opined although such limitations are vague and lack functional basis (Exhibit 9F). While not inherently lacking in persuasive value, the undersigned finds that the State agency determination at reconsideration by Jean Sutherland, M.D. regarding physical functioning and Mark Thompson, Ph.D. regarding mental functioning are more persuasive overall due to the specific functional limitations expressed (Exhibit 5A; Exhibit 6A).

D.E. 9-1 at 28. As to mental functioning, the ALJ specifically found that the opinion of Thompson was "more persuasive overall due to the specific functional limitations expressed." *Id.* The Commissioner pointed out this portion of the ALJ's opinion in her brief (D.E 13 at 6),

but Andrews denied its existence. D.E. 14 at 2 (arguing that "[t]he ALJ did not offer this reason."). Andrews fails to acknowledge this portion of the ALJ's opinion, let alone why it lacks substantial evidence or contains any legal error. The ALJ clearly found the opinion of Thompson to be more persuasive than Freel's regarding Andrews's mental functioning. Accordingly, the Court finds no legal error with this portion of the ALJ's findings.

In sum, the ALJ provided the required minimum level of articulation as to how she considered the supportability and consistency factors. Thus, the Court finds that the ALJ's evaluation of Freel's opinion related to Andrews's ability to sustain attention/concentration was not contrary to law.

## IV.  CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (D.E. 11) is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment (D.E. 13) is **GRANTED**;

(3) **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 11th day of July, 2023.

